Jackie **PRESTEGORD** et vir, Appellants,

v.

James C. **GLENN**, M.D., Appellee.

No. 8042.

Court of Civil Appeals of Texas, Amarillo.

Feb. 16, 1970.

Rehearing Denied March 23, 1970.

Harris E. Lofthus, Amarillo, for appellants.

Stokes, Carnahan & Fields and O. P. Fields, Jr., Amarillo, for appellee.

NORTHCUTT, Justice.

Jackie Prestegord, joined by her husband, instituted this suit for damages

against Dr. James C. Glenn charging negligence in medical practice and treatment. After a hearing was had before a jury, Dr. Glenn moved for an instructed verdict on the ground there was no evidence and insufficient evidence to show any negligence as claimed by the plaintiff. The trial court instructed the jury to return a verdict for the defendant and judgment was entered that the plaintiff recover nothing as against the defendant. From that judgment, the plaintiff perfected this appeal. The parties will be hereafter referred to as they were in the trial court.

Dr. Glenn, a specialist in obstetrics and gynecology, attended Mrs. Prestegord in her pregnancy which was established on August 26, 1966. Mrs. Prestegord subsequently experienced difficulties which culminated in the surgical removal of her uterus and lifeless fetus on November 21, 1966. Plaintiff alleged that Dr. Glenn was negligent as follows:

"1. In ignoring plaintiff's complaints of fever, constant stomach pain and vaginal discharge;

2. In failing to discover the fact that the fetus was dead when he could detect no sufficient growth or heartbeat;

3. In diagnosing plaintiff's condition as flu when informed that she was suffering pain in the abdomen, vaginal discharge, and fever;

4. In failing to perform surgery immediately upon discovering plaintiff's condition on November 18, 1966, if she in fact was in need thereof;

5. In failing to perform surgery prior to Sunday, November 21, he knowing or in the exercise of ordinary care should have known that plaintiff's condition was such as to require immediate attention, if she was in need thereof;

6. In performing a hysterectomy upon plaintiff when such operation was not necessary or advisable, if it in fact was not necessary."

Plaintiff presents this appeal upon one point of error contending there was sufficient evidence introduced upon which plaintiff was entitled to submit her case to the jury. The period of time here involved extended from July or August, 1966 to November 21, 1966, when Dr. Glenn performed surgery on the plaintiff in which her uterus and lifeless fetus were removed. Plaintiff testified everything seemed to be going fine until the night of October 14 when she woke up with a terrible pain in her stomach and felt very cold; Mr. Prestegord called Dr. Glenn and was told to bring plaintiff to the doctor's office the next morning, October 15; on that visit the doctor examined her entirely and stated he believed she had the flu; the doctor gave her an injection (an antibiotic); she told the doctor at that time she hurt very badly in her stomach on the lower left side; about 5:00 that night the pain was so bad she couldn't turn over in bed; her husband called the doctor and he said the medicine probably had not had time to work and to wait a day or two and see if the medicine would relieve the condition; on the night of October 15 the pain was extremely bad for about four hours; on Sunday, the 16th, got bad again and was advised by the doctor for her to come see him Monday morning, the 17th; on the last visit she was passing blood and the doctor told her he thought maybe she was going to try to abort; the discharge of blood never stopped from the 15th or 17th of October to November 21 when she was operated. She also testified there was never any occasion when she visited the doctor that she did not inform him of her pain and discuss it with him.

Dr. Glenn testified that he had no record of her having aches in the lower part of her stomach; that at the time she was having some vaginal spotting and she complained of some abdominal cramping; that the first time she complained of abdominal cramps was on October 17 and from his

knowledge he didn't think she had constant pain, but as far as just a constant pain in the abdomen, you would have to have other information to go along with it to have any idea what was causing it. Then the doctor was asked, "Well, assume she had constant pain in her lower abdomen, fever of 101.2, and vaginal spotting, if she had these three symptoms from the 17th of October, what would your diagnosis have been if you were aware of all of these complaints and you could see the objective symptoms of the fever and spotting, and received her suggestive complaints of a hard pain, constant pain in her lower abdomen?" His answer was, "I think I would have probably wanted more information if that was what her complaints were to me, if that was what she manifested to me was her complaints." The next question was, "What form would that 'more information' have taken?" His answer was, "I might have wanted a complete blood count on her and maybe even some abdominal x-rays." He never prescribed any of those tests or examinations as a result of the visit on October 17. Then he was asked, "But you would have if those three symptoms as mentioned had been visible to you?" He answered, "I think I would have. I would have tried to evaluate the patient, just how severe these things were, but if they were severe enough to suggest more study was indicated, I would have." It is stated in Snow v. Bond, 438 S.W.2d 549 (Tex.Sup.Ct.) as follows:

> "What constitutes negligence or malpractice is a mixed question of law and fact that can only be determined by the trier of fact on the basis of evidence admitted and instructions given by the court. A medical expert is not competent to express an opinion thereon. See Houston & T. C. R. Co. v. Roberts, 101 Tex. 418, 108 S.W. 808. The question of what a reasonable and prudent doctor would have done under the same or similar circumstances must also be determined by the trier of fact after being advised concerning the medical standards of practice and treat-

ment in the particular case. An expert witness can and should give information about these standards without summarizing, qualifying or embellishing his evidence with expressions of opinion as to the conduct that might be expected of a hypothetical doctor similarly situated. The latter is not an appropriate subject for expert testimony. See Phoenix Assur. Co. of London v. Stobaugh, 127 Tex. 308, 94 S.W.2d 428."

There is an issue of fact here involved in that the plaintiff testified to certain matters that she was experiencing and that she told the doctor about them. The doctor testified that she didn't inform him of these symptoms and if he had known them, he would have probably wanted more information such as a complete blood count and even some abdominal x-rays. Under this record, we think there is a matter at issue that should be submitted to the jury. Judgment of the trial court is reversed and remanded.